UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

COREY GAMBLE,                                       :

                Plaintiff,                    :

       - against -                          :

THE CITY OF NEW YORK (FOR THE NYC :
DEPARTMENT OF CORRECTION AND     :
THE NYC BOARD OF CORRECTION),    :
NORTH INFIRMARY WARDEN FIDEL     :
GONZALEZ, NORTH INFIRMARY        :
WARDEN JEROME DAVIS, THE NEW     :
YORK CITY DEPARTMENT OF          :
CORRECTION COMMISSIONER MARTIN   :
HORN, RIKERS ISLAND CORRECTIONAL :
FACILITY WARDEN "JOHN DOE",      :

                Defendants.                   :

------------------------------------------x

04 Civ. 10203 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/25/09_

       Plaintiff Corey Gamble brings this action *pro se* under 42 U.S.C. § 1983, alleging that, while he was imprisoned at Rikers Island, his constitutional rights were violated by defendants in limiting his right to exercise, confining him to an eight-foot-by-six-foot cage when he was engaged in outdoor recreation, failing to provide him with sufficient rain attire during inclement weather, and restricting his access to the law library. Defendants are the City of New York, Warden Fidel Gonzalez, Deputy Warden Jerome Davis, Commissioner Martin Horn, and Rikers Island Correctional Facility Warden "John Doe."

       Plaintiff filed his original complaint on December 23, 2004, and subsequently amended his complaint on October 5, 2006. Defendants answered plaintiff's amended complaint on March 22, 2007.

1

Defendants now move for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and plaintiff opposes. The motion is granted.

## THE COMPLAINT

Except where otherwise indicated, the following facts are taken from the amended complaint and from exhibits attached to the complaint. Although defendants move for judgment on the pleadings, the arguments are in fact made regarding the amended complaint. Nothing in the answer is relied on. For the purpose of this motion, plaintiff's allegations are assumed to be true.

Plaintiff, as pretrial detainee, was housed in the North Infirmary Command Facility at Rikers Island ("Rikers") for roughly 21 months, from March 17, 2003 until approximately December 12, 2004. The majority of plaintiff's time at Rikers was spent in the 2A Restraint Tier. There is no allegation as to why plaintiff was in the Restraint Tier, but it can be assumed that there was a need for a special condition of confinement.

### Alleged Violations of Rights

1) Recreation

Plaintiff makes reference to the "Minimum Standards" promulgated by the New York City Board of Corrections ("NYCBOC"), which provide for daily recreation for inmates. During inclement weather, inmates are to be given a choice of spending their recreation time outside or remaining in the housing areas. Plaintiff alleges that the Minimum Standards guarantee the availability of an indoor recreation area during inclement weather, but that they fail to define or describe what actually constitutes

2

an adequate indoor recreation area.   Plaintiff claims that on seven occasions, defendants Gonzalez and Davis denied his requests to use the gymnasium for indoor recreation during inclement weather in contravention of the Minimum Standards.  The court thus interprets the complaint to allege that on days of inclement weather, there was no indoor facility available for physical exercise or sport.

In addition, plaintiff asserts that he was denied an opportunity for any exercise on days when he missed scheduled recreation time due to court appearances.

Plaintiff further complains about his confinement to an eight-foot-by-six-foot cage during outdoor recreation.  He admits that this was a result of his being a Restraint-Tier inmate.

2) Rain Gear

Plaintiff claims that defendants do not allow inmates to have, and do not provide inmates with, hooded jackets or other rain accoutrements to protect the head, neck, ears, and face. Thus, these parts of the body would get soaked when plaintiff needed to "leave the facility" on rainy days.   He specifically recalls ten instances during 2004 when this occurred.   Plaintiff alleges that defendant Davis was responsible for a directive preventing inmates from wearing clothing with hoods, and that defendants Horn and Gonzalez approved the directive.

3) Access to the Law Library

Plaintiff asserts that he was denied access to the law library on days when he returned to Rikers from a court appearance.  He contends

3

that this constitutes a violation of the Minimum Standards, which entitle inmates to the use of legal materials within the facility's law library. Plaintiff claims that his lack of access to the law library severely hindered his ability to assist his attorney in preparing for his trial.

Grievances

The complaint refers to the prison grievance procedures. Defendants have provided the court with a copy of New York City Department of Corrections ("DOC") Directive #3375R, which describes the Inmate Grievance Resolution Committee ("IGRC") program in effect while plaintiff was incarcerated at Rikers. Five steps are specified, as follows:

> (1) Informal Review by the IGRC—an inmate files a grievance, and the IGRC may propose a solution to satisfy the inmate's complaint;
>
> (2) Formal Review by the IGRC—if the grievance is not informally resolved, the inmate may request a formal hearing where witnesses will be called to appear before the IGRC;
>
> (3) Review by the Commanding Officer—the inmate may appeal the IGRC's formal recommendation to the warden;
>
> (4) Central Office Review Committee ("CORC")—the inmate may appeal the warden's decision to the CORC; and
>
> (5) Board of Correction/Commissioner—the CORC's determination may be appealed to the NYCBOC.

At some point, plaintiff submitted a grievance to the IGRC regarding the lack of a designated indoor recreation space for use during inclement weather. On July 9, 2004, the IGRC proposed providing board games to be played within the housing area on rainy days. Plaintiff did not find that this resolution adequately addressed his grievance, and

4

requested a hearing before the IGRC, the second step in the IGRC grievance process. It does not appear that this hearing ever, in fact, occurred. No reason has been given for this.

On July 21, 2004, plaintiff lodged a grievance with the IGRC about the lack of rain gear. On the same date, the IGRC ruled his complaint "non-grievable" because it was not within the jurisdiction of the IGRC. The IGRC stated that this complaint should be addressed to the court.

On August 23, 2004, plaintiff complained to the IGRC about denial of recreation upon his return from court appearances. On the same date, the IGRC held his complaint to be "non-grievable" and "frivolous."

Thus, plaintiff filed grievances with respect to his claims of improper indoor recreation during inclement weather, the lack of recreation on court dates, and the failure to provide sufficient rain gear. As to the claim about a lack of an indoor facility during inclement weather, the plaintiff did not go through all the steps of the grievance procedure, and there is no explanation as to why this was. As to the claims of lack of recreation on court dates and inadequate rain gear, the IGRC responded that these were not proper subjects for grievances. Plaintiff filed no grievances regarding the use of the cage for outdoor recreation or limitations on access to the law library. His complaint can be read as alleging that these claims were not proper subjects for the grievance procedure.

5

The Claims In This Case

This action is brought under 28 U.S.C. § 1983.  Although plaintiff asserts all of his claims as violations of due process, certain of plaintiff's claims are ones that must be considered under the Eighth Amendment, although, as will be seen, the court concludes that they do not rise to the level of valid Eighth Amendment claims.  In any event, the claims the court is referring to are the claims regarding a lack of an indoor facility during inclement weather, the restriction to a cage during outdoor recreation, and the failure to supply rain attire during inclement weather.  The only claim properly under the rubric of due process is that concerning the denial of access to the law library on days when he returned to Rikers after court appearances.

Plaintiff seeks to recover money damages from the individual defendants and the City of New York.  He also seeks injunctive relief.

Defendants move for judgment on the pleadings on the grounds that plaintiff: (1) failed to exhaust the available administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) has not alleged grounds for holding the individual defendants liable under 28 U.S.C. § 1983; (3) has not alleged a sufficient claim of municipal liability against defendant City of New York; (4) has not asserted a physical injury and thus cannot recover money damages under the PLRA, 42 U.S.C. § 1997e(e); and (5) is not entitled to injunctive relief because he is no longer housed at Rikers.

6

## **DISCUSSION**

Defendants have answered the amended complaint denying liability, and now move for judgment on the pleadings under Fed. R. Civ. P. 12(c). As indicated earlier, however, the arguments of the defendants are all addressed to the sufficiency of the complaint. In deciding this motion, the court will assume the truth of the allegations in the amended complaint, and determine whether they are legally sufficient.

## I. Failure to Exhaust Administrative Remedies under the PLRA

The PLRA prescribes mandatory exhaustion of all available remedies for actions brought under 42 U.S.C. § 1983 regarding prison life irrespective of whether they "involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

As described earlier, plaintiff filed three grievances under the IGRC program. One did not go through all the prescribed steps, for reasons not shown, and two were held to relate to complaints not within the ambit of the program. Plaintiff filed no grievance as to the remaining two claims, and appears to allege that they too were "non-grievable."

Under the circumstances of the case, the court will not dismiss plaintiff's claims on this ground and will proceed to an evaluation of the merits.

## II. Eighth Amendment Claims

A prisoner's conditions of confinement fall within the ambit of the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337, 345 (1981).

7

But the Constitution does not guarantee prisoners freedom from any and all sorts of unsavory environs. Indeed, "conditions that are restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society." Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985).

While it is well-established that the Eighth Amendment "does not mandate comfortable prisons," Rhodes, 452 U.S. at 349, conditions of confinement must not seriously deprive inmates of basic human needs such as adequate food, clothing, shelter, and medical care. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). When the "State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The State must exercise its control in accordance with society's standards of decency. See Jones v. Goord, 435 F. Supp. 2d 221, 234 (S.D.N.Y. 2006).

To determine whether conditions of confinement are in line with these constitutional requirements, courts apply a two-part test. First, under the objective prong of the inquiry, a deprivation violates the Constitution only if it is "sufficiently serious." Farmer, 511 U.S. at 834. To violate the Eighth Amendment, a challenged condition of confinement must lead to the specific deprivation of a human need. See Wilson v. Seiter, 501 U.S. 294, 305 (1991). Second, under the subjective prong of the analysis, a constitutional violation exists only if the defendants have

8

a "sufficiently culpable state of mind."  Id. at 298.  In cases involving prison conditions, the required state of mind is "deliberate indifference" on the part of the prison officials.  Id. at 303; Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996).  Under the "deliberate indifference" standard, prison officials violate the Eighth Amendment only if they know of and disregard an excessive risk to inmate health and safety and do not reasonably respond to that risk.  See Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).

a) Denial of Recreation

Both the Supreme Court and the Second Circuit recognize that exercise is one of the basic human needs protected by the Eighth Amendment.  See Wilson, 501 U.S. at 304-05; Williams v. Greifinger, 97 F.3d 699, 704 (2d Cir. 1996).  Deprivations of exercise must be limited to unusual circumstances or situations where restrictions are needed for disciplinary reasons.  See Greifinger, 97 F.3d at 704-05. Factors courts consider in making the determination whether prison officials were deliberately indifferent to a plaintiff's right to exercise are the duration of the deprivation, the extent of the deprivation, the availability of other out-of-cell activities, the opportunity for in-cell exercise, and the justification for the deprivation.  See Williams v. Goord, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001).

Sporadic infringement of the right to exercise does not rise to the level of to a constitutional deprivation.  See, e.g., Houston v. Goord, No. 9:03-CV-1412 (GTS/DEP), 2009 WL 890658, at *4 (N.D.N.Y. Mar. 31,

2009) (declaring Eighth Amendment claim without merit because denial of opportunity to exercise outdoors for less than two weeks was *de minimis*); Gibson v. City of N.Y., No. 96 Civ. 3409 (DLC), 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (denying prisoner right to exercise for eight days in a 60-day period does not violate Eighth Amendment); Davidson v. Coughlin, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (depriving inmate of outdoor exercise for 14 consecutive days did not violate Eighth Amendment). An "occasional day without exercise when weather conditions preclude outdoor activity" does not constitute cruel and unusual punishment. Anderson, 757 F.2d at 36.

Plaintiff claims that he was denied the opportunity to exercise indoors when weather conditions were poor and when he returned to the facility from court appearances. But by his own admission, plaintiff was prevented from using the gymnasium for indoor recreation during inclement weather only seven times during his 21 months at Rikers. And he missed recreation due to a court appearance fewer than ten times. As the cases indicate, such temporary and relatively brief occasions where exercise is not afforded do not amount to a constitutional violation. The deprivation here was *de minimis*.

And plaintiff's allegation that the conditions of confinement were inconsistent with the NYBOC's recommended Minimum Standards does not in and of itself raise an issue about a constitutional violation. Lack of compliance with state requirements for correctional facilities is not *per*

10

*se* unconstitutional.  See Bradford v. Gardner, 578 F. Supp. 382, 384 (E.D. Tenn. 1984).

b) Confinement During Exercise

Inmates who are housed apart from the general prison population may be segregated during exercise as long as an opportunity to exercise is provided.  See Greifinger, 97 F.3d at 704-05.  Courts have found that confining prisoners to reasonably sized pens during outdoor recreation does not amount to a violation of the Eighth Amendment.  See Houston, 2009 WL 890658, at *4 (stating that being forced to exercise in an area that is eight-feet-five-inches by six-feet-nine-inches does not constitute a constitutional violation).

In this case, plaintiff was housed separately from the general population, so that there was no violation of the Eighth Amendment in using a cage to separate him from other inmates during outdoor recreation.

c) Rain Gear

Plaintiff asserts that defendants failed to allow him to wear hooded garments or to provide some other adequate protection against rain for the upper parts of his body.  As a result, plaintiff claims that on approximately ten occasions in 2004, his head, face, ears, and neck were drenched.  This does not rise to the level of an Eighth Amendment violation.

11

III. Due Process Claim—Law Library

      As a matter of due process, prisoners must be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a court-access claim, an inmate must show that the alleged inadequacies caused him "actual injury," namely actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim. See Lewis v. Casey, 518 U.S. 343, 348-49 (1996); Rossi v. Stevens, No. 04-CV-01836 (KMK), 2008 WL 4452383, at *12 (S.D.N.Y. Sept. 30, 2008). The Constitution, however, "does not require unlimited and unrestricted access to a law library at the demand of a prisoner." Oliver v. Head Sheriff of the Dep't & Div. of Corr. of Nassau County, No. 07-CV-4355 (NG), 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008). Rather, prison officials may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts. See, e.g., Shango v. Jurich, 965 F.2d 289, 293 (7th Cir. 1992) (finding prisoner was not denied access to courts because prison's law library was closed nights, weekends, and holidays, and at other times due to lockdown, construction, or shortage of guards or librarians, absent evidence of any detriment or prejudice suffered by prisoner in litigation).

      Plaintiff contends that defendants interfered with his access to the courts by preventing him from visiting the Rikers law library upon

returning from his court appearances. But these denials of access involved discrete incidents of scheduling, not any general, unjustified hindrance. Moreover, plaintiff does not allege that he missed a deadline or that a case was otherwise prejudiced due to his inability to visit the library upon his return from court. Plaintiff's claim does not rise to the level of a constitutional violation of plaintiff's right of access to the courts.

### CONCLUSION

Defendants' motion for judgment on the pleadings is granted, and the case is dismissed.

Dated: New York, New York
      September 25, 2009

SO ORDERED

Thomas P. Griesa
U.S.D.J.

13